I am Stephen Capron. I represent Mr. John Miller, the plaintiff in the underlying case, your appellant. The issues in this case and the facts that are relative to those issues, I believe, are fairly simple. The case itself may not be that simple, but the material facts to this appeal, I do believe, are simple. The underlying case was a civil rights action, also alleging various torts under Arkansas state law. The plaintiff prevailed on all of the claims, notwithstanding the claim otherwise by the defense in their briefing. The judgment was entered on all of the claims that were brought. The details of the underlying case, while extraordinary and ugly, are probably, for the most part, not legally significant. What I do believe is legally significant about the underlying case and the facts of that case are the fact that it involved civil rights and that the policy of promoting availability of counsel that goes with the Civil Rights Act is very much at issue here. What we're alleging, our primary argument, is that the district court's denial of the full market rate for reimbursement of counsel is in and of itself a fundamental opposition to the policy of promoting the availability of counsel to undertake these cases. The evidence that was before the court at the time of the fee application did include, among other things, the market rate information that would establish what the proper market rate was. It also established that there was a distinct lack of availability of counsel to take these cases in the Fort Smith area. And for that, I pointed out that my client exhausted his efforts to seek counsel in the Fort Smith area and ultimately resorted to going 100 miles away where I am in Tulsa to hire me. Now, that's a gentleman who had the available resources of the Internet and the phone book and whatnot, but he also had, and I think this is important, a criminal defense lawyer from the underlying case who assisted him in the search. And with all of those resources available to him, he still could not find local counsel who would take his case. The primary issue I'd like to address on appeal is this issue of the prevailing rate or the reimbursement rate that was decided by the trial court. So you're talking about the per hour rate, not the hours reimbursed? Yes, Your Honor. The rate for reimbursement of counsel, whether or not that was supported. So your view is it was an abuse of discretion for the district court to not consider the local going rate, that the district court had to look at the going rate in your community? No. I would allege, similar to that, that abuse of discretion is the proper standard, but I don't think we look just at Fort Smith. We look at regional rates. In some civil rights cases, including an Eighth Circuit case, Casey versus Kabul, we talk about national rates for civil rights cases. But to be certain, the community that we look at is a relevant issue for this court to consider in this appeal, and that's one of the issues we've raised. What's your best case saying it's an abuse of discretion for the judge to look at the rate in Fort Smith? Planned Parenthood versus Miller is the case that I think most clearly states that we're looking at the very least at regional rates, and that was a case where Chicago rates and South Dakota rates were at odds with one another. We're dealing with cases across state lines, and in that case, the prevailing rate looked more at a regional application rather than at a local application. Forgive me for not remembering the facts there, but did this court reverse a district court for not considering regional rates in that case? I don't remember the precise holding, Your Honor. I do recall that the . . . Well, it's important if you're talking about an abuse of discretion standard, whether we said in that case that it's an abuse not to consider regional, or if we just said it was okay in that case to consider regional. Well, I don't . . . You're asking us to say it was an abuse for Judge Holmes to consider only the Fort Smith market. That's part of what I'm saying, but I'm also saying within that market, that we've got market evidence available to this court that was available to Judge Holmes to establish what the proper market rate was. Oh, I see. So he says plaintiff did not provide any information regarding the prevailing market rate in this community. That's correct. That's wrong? That's correct, Your Honor. As we pointed out in the brief, we did have, number one, the issue of the community I think is supported by more than just the Planned Parenthood case. McDonald v. Armantrout establishes that a broad application, not a local application, should be given. Casey v. Kabul is the case that makes reference to potentially looking at national rates when it comes to rates or the community of rates that should apply. But when you look at the actual evidence, I think all of the cases that have been cited by all of the parties and by the court talk about the market rate being that which a client is willing to pay. What is the market rate, evidence about the market rate in the Fort Smith area? The evidence of the market rate in the Fort Smith area for me was my experience practicing there as well as in Oklahoma. The fact that Tulsa is only approximately 100 miles away and the fact that a state line falls between them is, I think, arbitrary. There's really no difference in the market for Tulsa versus the market for Fort Smith. Well, but you've got to have evidence of that. The judge is based in Fort Smith. He says, I know the market here, and it's 250. I don't believe he said that. And you say, well, I practice in Tulsa, it's 300. I don't believe he said that the market in Fort Smith was 250. He came to that conclusion, but the cases, especially the Guzman case, point out that he should be making a decision based upon the actual counsel who is before him, not upon some market average or generality. And in this particular case, I've never met Judge Holmes. I've never practiced before him or with him when I understand he was in private practice not too long ago. So he has no actual experience with me in order to evaluate my capability as an attorney. He could only have been looking at market rates. And as you look at the decision from the Guzman case, it goes on to state that the rates that attorneys charge should be the presumptive rate that applies. And it says that a judge who departs from this presumptive rate must have some reason, other than the ability to identify a different average rate in the community. Now here, Judge Holmes could not have had anything available to him other than, I presume, he's got some knowledge of what the community that he's talking about, the Fort Smith community. In fact, I'm sure he's had other cases, other civil rights cases, and attorneys have made other arguments. I beg your pardon? He has no doubt had other civil rights cases with other evidence about attorney rates. I have assumed that. I don't know him, but I assume that he's got knowledge of what certain attorneys in the community are charging, but he doesn't have knowledge of my particular capabilities, and that's what these cases state should be evaluated is what the particular attorney seeking the time charges. And the reason for that is, as set forth in the Guzman case, because some attorneys charge more and get things accomplished quickly, while some charge less and take longer to accomplish certain matters. And it's the overall efficiency that the market would tend to establish the rate for any particular attorney. Again, these cases say you should look at the actual attorneys and actual rates, not market averages. The use of market averages is inherently flawed in terms of compensating lawyers because it's going to overcompensate the underqualified and undercompensate the overqualified, and that policy will not further the policy of promoting the availability of competent counsel to take civil rights cases. It's fundamentally at odds with that policy, and that's why the particular rates charged by any particular counsel should be the starting point, assuming that the market supports that rate. And in this particular case, what Judge Holmes was shown is that this is a standard rate. This is a standard rate charged by me routinely, not just to this client, but in civil rights cases, in other tort cases, and it includes experience with charging this rate in Fort Smith. I cited the Timmerman case as one of those where Judge Holmes' predecessor evaluated my rate in my sworn affidavit. Now, that case was a full five years ago, but the rate that Judge Holmes used was the rate that was in place for me five years ago. Judge Holmes' opinion would be that my rate hasn't gone up in five years, and that's just not natural in the context of a lawyer who naturally over time gains experience and becomes better at what he does, more efficient, and charges for those reasons. Was he also putting in the equation the results obtained? I beg your pardon? Was he also putting in his equation the results obtained? If he did in terms of the rate, he didn't state that. He just simply stated that there's no evidence of what the market rate is, and that's not accurate. Guzman says the primary thing you should be looking at as evidence is what clients will pay. In this case, a Fort Smith or rather a Barling resident, which is an outlying area to Fort Smith, was willing to pay. This is an hourly fee contract. This is not a contingent fee contract, and the client in this case was willing to pay $300 per hour, and that's what the starting point and the presumptive rate should be under Guzman and under city of Kabul. Guzman is a Seventh Circuit case. Correct. You want us to adopt that law for this circuit? Is that why you keep citing it? Well, I cite it because I reached that case by reaching the rationale described in the city of Kabul decision, which is an Eighth Circuit case, which cited the Guzman case with a positive reflection upon that particular rationale from the Guzman case, and because the Guzman case is so clearly on point in this case. It has compelling rationale that I do believe this court should adopt. So we've got evidence of what the rate is, the market rate. We have the best evidence. What Guzman and Kabul say is the best evidence is what a client is willing to pay. That's the presumptive rate. In addition to that, we have my experience practicing in Fort Smith and in the region in general. I've established through my affidavit that I've qualified. I've been qualified as an expert in the past. I know the rates. I'm qualified to give opinions, and my opinion is that this rate applies. Now, that doesn't mean the judge is constricted to that rate. It means he needs to come up with some level of evidence to deviate from it, and that's exactly what the Guzman case says when it says a judge who departs from this presumptive rate must have some reason other than the ability to identify an alternative blended rate or average rate. And in this particular case, taking the rate that I charge and only compensating for part of it necessarily, it doesn't necessarily drive me out of the market for taking these cases, but it necessarily works against me taking those cases. Now, in this particular case, the evidence, as I mentioned before, already establishes that there's a lack of attorneys taking these cases, such that my client had to seek my services at the proverbial eleventh hour of his statute of limitations in Oklahoma. Can I ask you, I'm sorry, if you want to finish the thought, but I wanted to, before you ran out of time, to ask you about your argument regarding the prejudgment interest. What are you asking this court to do on that issue? To remand the case for an application of Arkansas law to allow us the opportunity to show the court, which he obviously did not understand from his ruling, that number one, Arkansas law applies to prejudgment interest. Number two, we have tort claims under Arkansas law. And three, that we have damages that are subject to precise calculation with mathematical certainty. So this is something that the district court needs to sort out in your view, how much of an allocation between the section 1983 claims versus the Arkansas, and then if there is prejudgment interest, is it mandatory and all of that? I believe it's an issue that ought to have been addressed in the first instance by the district court, and it was not. Well, why isn't the prejudgment interest included in the amount that you agreed to accept in the offer of judgment? Because we agreed to accept from the damage award the costs and fees that were otherwise recoverable under law. What authority do you have that prejudgment interest is a cost under Rule 68 as opposed to part of the damages? Why isn't prejudgment interest part of the damage award? Because the damage award is something determined by the trier of fact, and an interest award is something determined in these cases after the fact by the court. Well, do you have any authority that prejudgment interest is a cost under Rule 68? Because I think you're saying the award said you get $40,000 plus costs. The award says the damages are $40,000. I'm not aware of any authority that says interest in this particular scenario, prejudgment interest, is considered a damage. I've cited authorities that say it's something for the court to decide after the damages are awarded. Well, but all you got under the judgment was $40,000 plus costs and attorney's fees, as I understand it. So you have to establish that prejudgment interest is a cost, right? I don't think you have to establish that it's a cost. I think you have to establish, I have to establish, that it's an entitlement that comes based upon a damage award of $40,000. If there's nothing else, I see that I'm out of time. Okay, thank you. Mr. Newell. Thank you, Your Honor. I'll try my best to talk for 15 minutes, but I don't think I can. I want to start by quoting Chief Judge Riley in his Quigley opinion from 2010. The complexity of the issues in this case simply did not warrant the requested amount of lawyering. That's what this bill is down to. We've got a very, very simple case that involved only four depositions. It was a tasering case by a law enforcement officer from a small town in northwest Arkansas. There was alleged personal injuries. There were numerous discovery issues that had to be resolved by a United States magistrate judge. There were two different orders to compel issued that took up an immense amount of time. Other than that, there was no what I would call courtroom time. The only time we ever saw the courtroom was in the magistrate's court. And ultimately, an offer of judgment was made in the amount of $40,000 that didn't say anything about what claims were being settled. It was simply a Rule 68 offer of judgment, and Mr. Miller accepted it. And as Judge Collison pointed out, it just said that here's a judgment for $40,000. There was no, quote, damage award. There was no courtroom litigation. It was just a simple matter that was settled in a simple way. Mr. Capron submitted a fee petition that was backed up by an invoice, fairly routine. The judge issued an order, which in my opinion was quite fair. If you look at the percentages, which sometimes the Eighth Circuit looks at when analyzing punitive damages, it was only reduced by 16%. The hourly rate was only reduced 16% from $300 to $250, which I think is insignificant. And the total amount, the bottom line total amount was only reduced 30%, and that includes that 16% on the hourly part. So I would have thought a $38,000 attorney's fee based on a $40,000 offer of judgment in a case that didn't get close to trial, when only four depositions were taken, would be something to ring the bell about. So, I mean, if there's any question about Judge Holmes' knowledge of hourly rates in the Fort Smith area, I think the court can take judicial notice of the fact that he served, he practiced law there for over 30 years. He was appointed to the bench, and that's what he said in his opinion. He said very clearly. This is an 11-page opinion on an attorney's fee petition. It's the most comprehensive one I've ever seen. He thoroughly goes into each point made by the appellant here. He analyzes the, I think his opinion has more wording than my brief in opposition. He goes through every item and outlines why he's ruling what he's ruling. So to find an abuse of discretion in there, I think, is going to be a challenge. In short, I think it was a very well-written opinion. I think that the attorney's fee given in the case was very fair for the work that was done, and I think that this court should affirm on all points. What is your view on the prejudgment interest issue?  Judge Holmes addressed that as well. He said it's discretionary under Section 1983. I declined to do that. In your view, was there a division of claims for the settlement in any way that would guide that? None whatsoever. It was a simple form, Rule 68, offer of judgment that's not in the record. It just says the offer is $40,000. What about the Arkansas state law? Are you saying that once that settlement offer was accepted, that was cut out, that it's not? It looks like in the notice of acceptance, there's attorney's fees and costs. It looks like the plaintiffs tried to reserve the right to ask for interest as well, but it didn't make it into the final document. What's your view on that? Are you just saying that just falls out once the $40,000 is accepted? I am saying that. You're talking about in the prayer for relief in the complaint? Well, I'm actually just looking at the offer of judgment, sort of the resolution of how this case was resolved given there were multiple claims. What's your view of how we read that resolution, the ultimate resolution and judgment? Was it all under the section 1983 claims? It's at page 37, I think. Well, in your addendum, you have the acceptance documents, notice of acceptance of offer of judgment and the various communications back and forth. There was absolutely no discussion ever about what type of case was being settled, what claim was being settled. The case was brought pursuant to section 1983, but for section 1983, it couldn't have been brought in that court. There's no jurisdiction. I mean, it's a federal court against residents, between residents of Arkansas, and the whole case was premised on excessive force violation of section 1983. So your view is it's just not applicable? It's just not applicable. And as I pointed out, had it been a tort case, the offer of judgment would not have said $40,000 plus costs and attorney's fees because in Arkansas, attorney's fees are not available on a tort action. They are on a contract action. When there's a liquidated sum at stake that the plaintiff prevails upon, then the courts typically allow prejudgment interest on that sum certain. In this case, it was just a tort case with a prayer for in excess of $75,000, and there never was any specific numbers mentioned until the offer of judgment. And that was pulled out of the air with hopes that Mr. Miller would take it. Thank you very much. We don't have much time. I know. Thank you, Your Honor. Just very quickly, counsel's own cited authority was Lovell on this issue of attorney's fees or, excuse me, interest, and it says that in tort cases under Arkansas law, the fees apply if we've got liquidated amounts of damages. We do for the attorney's fees paid in the underlying case and the medical damages. Counsel also talked about the detail that Judge Holmes used in his description. Well, Judge Holmes never took evidence to be able to know what these various issues were. He could not have had detail. He simply cut in half a handful of entries, and it's a fundamental error, I think, to say, on the one hand, you don't have evidence, and on the other hand, our Rule 54 argument, he says, you can't give me evidence. You don't have it and you can't give it to me means he's just basically telling us we lose. And those are just the only two points I wanted to add on to my argument. Thank you for your time. We'll take a recess now before we go to the next case. Thank you.